Judgment reversed<br>and cause remanded.

GENE DONOFRIO and WAITE, JJ., concur.

---

The STATE of Ohio, Appellee,

v.

HUFFMAN, Appellant.

[Cite as *State v. Huffman*, 151 Ohio App.3d 222, 2002-Ohio-7121.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2001–A–0031.

Decided Dec. 20, 2002.

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Angela M. Scott, Assistant Prosecuting Attorney, for appellee.

Jon T. Field, for appellant.

WILLIAM M. O'NEILL, Presiding Judge.

{¶ 1} Appellant, Rodney B. Huffman, appeals from the judgment entered by the Ashtabula County Court of Common Pleas. Huffman was convicted of one count of gross sexual imposition and one count of abduction.

{¶ 2} Huffman had been living with the victim, Barbara White, for twelve years. The couple had two children together. White and Huffman stopped living together in 2000, and a protective order was issued against Huffman.

{¶ 1} On the morning in question, Huffman violated the protective order when he entered White's trailer. Huffman admitted tying White up in order for them to talk about their daughter. However, the following facts were disputed at trial.

{¶ 4} White testified that she engaged in various sexual acts with Huffman. She testified that all of the sexual acts were nonconsensual. However, she stated that she told Huffman that she did consent to certain acts because she was afraid of him. Huffman testified that all of the sexual acts were consensual.

{¶ 5} After the sexual acts concluded, White and Huffman had a conversation about their daughter. Huffman then left the trailer. White called her sister regarding what had happened, and her sister called the Ashtabula County Sheriff's Office.

{¶ 6} Huffman was indicted on three counts of rape and one count of kidnapping. A jury found Huffman guilty of gross sexual imposition, a fourth degree felony, and abduction, a third degree felony. The trial court merged the counts for sentencing and sentenced Huffman to a term of nine months for the gross sexual imposition charge and a term of one year for the abduction charge.

These terms were to run concurrently. The trial court also found Huffman to be a sexually oriented offender.

{¶ 7}  Huffman raises two assignments of error on appeal. His first assignment of error is:

{¶ 8}  "The trial court erred to the prejudice of appellant when it failed to grant the appellant's motion for a mistrial based on the state of Ohio's use of peremptory challenges to exclude men from the jury."

{¶ 9}  Generally, a party may use peremptory challenges to exclude a potential juror for any reason. However, in *Batson v. Kentucky*, the United States Supreme Court held that a peremptory challenge could not be used to exclude a potential juror based on race.[1]  The *Batson* Court set forth a burden-shifting exercise to take place when it is alleged that a peremptory challenge is motivated by race. First, the party opposing the strike must make a prima-facie showing of discrimination. The burden then shifts to the party attempting to use the strike to show a race-neutral reason for the exclusion. Finally, the trial court determines whether the party opposing the strike has proven purposeful discrimination.[2]  The United States Supreme Court has extended *Batson* to prohibit peremptory strikes based on gender.[3]

{¶ 10}  After questioning a prospective juror named Mr. Bloom, the state chose to excuse him. Defense counsel objected to this exclusion under *Batson*, arguing that the state had used all four of its peremptory challenges to exclude men. The trial court then asked the state to provide reasons for the exclusions of Mr. Lewis, Mr. Nicastro, Mr. Ollis, and Mr. Bloom. The state asserted that *Batson* was inapplicable to this case and did not provide a reason for excluding any of the prospective jurors. The trial court then overruled defense counsel's objection.

{¶ 11}  The trial court then seated the final panel. A lunch recess was taken. After the lunch recess, the trial court met with counsel in chambers. Defense counsel stated to the court that the state now conceded that *Batson* applied to gender. Defense counsel moved for a mistrial.

{¶ 12}  The trial court denied the motion for mistrial and asked the state to provide gender-neutral reasons for excusing Mr. Bloom. The state responded

---

1.  *State v. White* (1999), 85 Ohio St.3d 433, 436, 709 N.E.2d 140, citing *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

2.  Id., citing *Batson v. Kentucky*, 476 U.S. at 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69.

3.  *State v. Gowdy* (2000), 88 Ohio St.3d 387, 392, 727 N.E.2d 579, fn. 2, citing *J.E.B. v. Alabama ex rel. T.B* (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89.

that Mr. Bloom was not conservative enough, that he wore an earring and was not dressed conservatively, and that they just had a "feeling." The trial court did not ask for gender-neutral reasons for excluding the other three male prospective jurors.

{¶ 13} Huffman's first argument is that the trial court should have asked the state to provide gender-neutral reasons for the exclusion of the other three male prospective jurors. Huffman's trial counsel did not specifically object until the exclusion of Mr. Bloom, the state's final peremptory strike. At the time when the state provided gender-neutral reasons for the exclusion of Mr. Bloom, defense counsel did not request that the trial court make the state provide gender-neutral reasons for the exclusion of the other three men.

{¶ 14} Initially, the trial court should have required the state to provide gender-neutral reasons for the exclusion of all four male prospective jurors who were dismissed by the state's peremptory challenges. The trial court mistakenly relied on the state's assertion that *Batson* did not apply to gender. However, following the lunch break, the state conceded that *Batson* does apply to gender-based exclusions, and the trial court required the state to provide gender-neutral reasons for the dismissal of Mr. Bloom. Had defense counsel requested, the trial court most certainly would have required the state to provide gender-neutral reasons for the exclusion of the other three men.

{¶ 15} The actions of defense counsel in relation to the state's first three peremptory strikes were not sufficient to establish a prima-facie showing of discrimination under the first prong of *Batson*. Therefore, the trial court was not required to ask the state to provide gender-neutral reasons for the dismissal of the other three males.

{¶ 16} Huffman next argues that the trial court should not have accepted the state's gender-neutral reasons for excluding Mr. Bloom, because the assistant prosecutors had the lunch hour to come up with a response. A trial court has great deference in determining whether the state's reasons were nondiscriminatory.[4] Accordingly, a trial court's decision should not be overturned unless a reviewing court determines that it was clearly erroneous.[5]

{¶ 17} We do not consider the trial court's determinations to be clearly erroneous. The state provided gender-neutral reasons for the exclusion of Mr. Bloom. These reasons included the fact that Mr. Bloom did not appear conservative to the state.

---

4. (Citations omitted.) *State v. Gowdy*, 88 Ohio St.3d at 393–394, 727 N.E.2d 579.

5. Id.

{¶ 18}   Huffman's first assignment of error is without merit.

{¶ 19}   Huffman's second assignment of error is:

{¶ 20}   "Appellant was denied the effective assistance of counsel in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶ 21}   Huffman argues that he was denied the effective assistance of counsel due to trial counsel's failure to object to the trial court's decision requiring the state to provide a gender-neutral reason only for its exclusion of Mr. Bloom, but not the other three male jurors excluded by peremptory challenges.

{¶ 22}   In *State v. Bradley*, the Supreme Court of Ohio has adopted the following test to determine whether counsel performance is ineffective: "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." [6] Moreover, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  * * * If it is easier to dispose of an ineffectiveness claim on lack of sufficient prejudice, * * * that course should be followed." [7]   Finally, "[t]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." [8]

{¶ 23}   Even had trial counsel objected to the trial court's failure to require the state to provide gender-neutral reasons for all of their peremptory challenges, the state very well may have been able to provide such reasons.

{¶ 24}   The actions of both the trial court and Huffman's trial counsel were less than perfect regarding the *Batson* issues.  However, as the trial court noted, the final composition of the jury in this case was five female jurors and seven male jurors.  Therefore, any mistakes made by the trial court and Huffman's trial counsel regarding the state's use of peremptory challenges to exclude men were harmless beyond a reasonable doubt.

---

6.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. (Adopting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.)

7.  Id. at 143, 538 N.E.2d 373, citing *Strickland* at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

8.  Id. at paragraph three of the syllabus.

[7] {¶ 25} In addition, Huffman has not shown that a jury consisting of a greater majority of male members would have rendered a different verdict. Thus, Huffman has not demonstrated that he was prejudiced by his trial counsel's alleged ineffective assistance. Huffman's second assignment of error is without merit.

{¶ 26} The judgment of the trial court is affirmed.

Judgment affirmed.

ROBERT A. NADER and DIANE V. GRENDELL, JJ., concur.