OPINION
{¶ 1} David and Cathy Karpinski appeal from the verdict entered in the Columbiana County Common Pleas Court in favor of defendants-appellees Paul Lim, M.D. and Radiology Associates in the Karpinskis' medical malpractice action. The first issue presented concerns whether the trial court properly prohibited a Canadian expert from displaying and interpreting certain radiographic studies. The second issue revolves around the court's removal of a juror for cause during trial. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} David Karpinski [hereinafter plaintiff] was in an automobile accident on February 3, 2000. He was treated at East Liverpool City Hospital. Dr. Lim, who works for Radiology Associates, was the radiologist who initially interpreted plaintiff's radiographic studies, specifically the x-ray and CT films. Dr. Lim did not find that plaintiff had a herniated disk or subluxation. However, the next day, after plaintiff was transported to Allegheny General Hospital, radiographic studies showed such disk herniation, requiring surgery.
 {¶ 3} On February 1, 2001, plaintiff and his wife filed suit against East Liverpool City Hospital, two physicians who treated him at the hospital and their employers, and Dr. Lim and his employer. At the time of trial, only Dr. Lim and his employer remained as defendants. Plaintiff alleged that Dr. Lim violated the standard of care by failing to notice his disk herniation. He claimed that the delay in diagnosing his condition caused fifty percent more impairment of fine motor, bladder, and bowel control and other dysfunction. Dr. Lim insisted that the radiographic studies taken on February 3, 2003 do not show such herniation and that any herniation appearing on the Allegheny studies occurred after his February 3 studies were completed.
 {¶ 4} The case was tried on October 15, 16, 17, and 20, 2003. The eight-member jury unanimously returned a verdict in favor of the defendants. Plaintiff filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 5} Plaintiff sets forth two assignments of error, the first of which contends:
 {¶ 6} "THE TRIAL COURT ERRED WHEN IT RULED THAT PLAINTIFFS' EXPERT, HARLEY SANDWITH SMYTH, M.D., WAS PROHIBITED FROM DISPLAYING AND INTERPRETING PLAINTIFF, DAVID KARPINSKI'S X-RAY FILMS FROM EAST LIVERPOOL CITY HOSPITAL IN FRONT OF THE JURY."
 {¶ 7} Dr. Smyth is a Canadian neurosurgeon who was called as one of plaintiff's expert witnesses. Evid.R. 601(D) prohibits an expert witness in a medical malpractice action from testifying on the issue of liability if that expert is not licensed to practice in one of the states of the United States.
 {¶ 8} Many courts have defined the use of the word "liability" in this rule as: fault, duty and breach, or standard of care. Lessler v. Ohio State Univ. Hosp. (May 8, 1997), 10th Dist. No. 96API10-1276; Hileman v. Kramer (Dec. 29, 1995), 2d Dist. No. 15066; Joyce-Couch v. DeSilva (1991),77 Ohio App.3d 278, 286 (12th Dist.); Savage v. Correlated Health Syst. (Oct. 17, 1990), 9th Dist. No. 14491, 14498 (allowing Canadian physician to testify only on causation); Wise v. Doctor's Hosp.North (1982), 7 Ohio App.3d 331, 333-334 (10th Dist.), citingMcCrory v. State (Mar. 27, 1980), 10th Dist. No. 79AP-621 (McCormac, J., concurring), affirmed by (1981), 67 Ohio St.2d 99
(where the Supreme Court referred to the rule's use of liability as meaning fault). These courts then conclude that Evid.R. 601(D) does not bar an expert from testifying as to causation and damages.
 {¶ 9} Here, both parties agree with the interpretation of this law. Specifically, they agree that pursuant to Evid.R. 601(D), Dr. Smyth was not able to testify on the issue of standard of care or duty and breach of duty, but that he was able to testify about causation and damages.
 {¶ 10} In applying the rule that Dr. Smyth cannot testify as to duty and breach of duty, the trial court granted defendant's motion in limine to bar Dr. Smyth from displaying and interpreting the radiographic studies from East Liverpool City Hospital. Accordingly, we must determine whether the trial court abused its discretion in precluding Dr. Smyth from presenting this evidence. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296. As defendants note, the proper plaintiff's expert could and did display and interpret these studies.
 {¶ 11} Plaintiff argues that Dr. Smyth's interpretation (that the studies showed subluxation) was required in order for him to render his opinion on causation. Defendants counter that Dr. Smyth was properly permitted to answer hypotheticals based upon the standard of care opinion given by another of plaintiff's experts but that Dr. Smyth could not testify as to his own interpretation of the radiographic studies as this would amount to liability testimony.
 {¶ 12} Defendants' argument is correct. As plaintiff concedes, Evid.R. 601(D) prohibits Dr. Smyth from giving testimony on duty and breach of duty. If he were permitted to testify that the radiographic studies showed the condition that Dr. Lim claims they did not show, then Dr. Smyth would have been disputing Dr. Lim's evidence that he did not breach his duty. In other words, by stating that the x-rays and CT films show the very condition that ultimately resulted in plaintiff's malpractice claim, Dr. Smyth is essentially stating that Dr. Lim did not render quality care when he failed to notice this condition. Dr. Smyth cannot testify as to the quality of the care. See, e.g., Joyce-Couch, 77 Ohio App.3d at 286. Although it was critical for plaintiff to establish that there was disk herniation when the East Liverpool films were taken, it was not the place of Dr. Smyth to establish this; that was the role filled by plaintiff's other expert. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 13} Plaintiff's second assignment of error alleges:
 {¶ 14} "THE TRIAL COURT ERRED WHEN IT REMOVED JUROR # 7 FROM THE JURY AND REPLACED HER WITH AN ALTERNATE JUROR."
 {¶ 15} In voir dire, the potential jurors were asked if they ever had surgery on their neck or back. (Tr. 32). It was not until the third day of trial that juror number seven approached the court and disclosed that she remembered something she should have disclosed in voir dire. Specifically, in 1957 or 1958, she fell at work, resulting in a back injury and requiring disk fusion surgery. (Tr. 455). She never went back to work after this surgery. (Tr. 456). She still has residual effects when she lifts more than fifteen or twenty pounds. (Tr. 456-457). She also disclosed that they had problems removing the dye injected for the initial diagnosing myelogram and they actually never did remove all the dye. (Tr. 457).
 {¶ 16} When the court asked if her prior experience with a similar injury and surgery would cause her to lean toward the plaintiff's side, the juror stated, "Not really, no." She opined that she could be fair to both parties. (Tr. 459). Plaintiff did not further question the juror when given the opportunity. (Tr. 459). Defense counsel, however, asked the following question:
 {¶ 17} "If you were — knowing everything that you just told us, if you were one of the parties to this lawsuit, would you want someone with your knowledge that you just conveyed to us in your thinking about that to sit on the jury to judge your case, or would you prefer that that person not be on your case?
 {¶ 18} "[Juror]: Well, they might relate to their back surgery, considering what his was, you know. * * * It might bother me." (Tr. 460).
 {¶ 19} Defense counsel then asked that this juror be dismissed and replaced with the alternate. He argued that although she initially said she could be fair, her further responses showed that she may not be able to be impartial; he was especially concerned that she only disclosed her past after hearing plaintiff testify. (Tr. 460-461). Plaintiff's counsel opined that the juror should remain because she said she could be impartial. (Tr. 461). The court took the matter under advisement for the weekend, but stated that the court was inclined to excuse her at the end of the day. (Tr. 461-462). When court resumed on Monday, the court stated that the juror had been called and told not to appear. She was then replaced by the alternate. (Tr. 527).
 {¶ 20} First, it should be noted that the jury originally consisted of eight jurors and one alternate. Only six out of eight were required to agree. See Ohio Const. Art. I, § 5. The jury here was unanimous in favor of the defendant. Thus, defendants argue that plaintiff was not prejudiced by the removal of juror number seven. Plaintiff did not specify exactly how he was prejudiced. Defendants note that removal can be harmless.State v. Huffman (2002), 151 Ohio App.3d 222.
 {¶ 21} Regardless, the decision to remove a juror is a discretionary function of the trial court who has the opportunity to observe the juror first-hand and who is in the best position to judge the juror's sincerity. Berk v. Matthews (1990),53 Ohio St.3d 161, 168-169. This court shall not substitute our judgment for that of the trial court when interpreting a juror's answers as possibly partial. See Id.
 {¶ 22} Pursuant to R.C. 2313.42(J), the trial court has good cause for removing a juror where the juror discloses by her answers that she cannot be a fair and impartial juror or will not follow the law as given by the court. The next statute then provides that in addition to the causes listed in R.C. 2313.42, a party may challenge a juror on suspicion of prejudice or partiality, for insufficient knowledge of English, or any other cause that may render her an unsuitable juror at that time. R.C.2313.43. "The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." Id.
 {¶ 23} Here, juror number seven admitted that she might not want someone like herself on the jury if she were a party to this lawsuit. Her answers implied that she may use her personal knowledge of the injury, surgery, and recovery to rule a certain way in the case. As aforementioned, R.C. 2313.43 allows the court to sustain the suspicion of prejudice challenge if the court merely has a "doubt" as to the juror being "entirely unbiased." See Lingafelter v. Moore (1917), 95 Ohio St. 384 (especially if doubt as to partiality is disclosed after all the peremptory challenges have been exhausted as in this case). Here, the court, which had the benefit of observing the juror's demeanor, voice inflection, and gestures, had such a doubt. As such, the trial court did not abuse its discretion in removing the juror and replacing her with an alternate.
 {¶ 24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs, DeGenaro, J., concurs.