WISE, EXR., ET AL., APPELLANTS, v. DOCTORS HOSPITAL NORTH; BOWDEN ET AL., APPELLEES.

(No. 81AP-729—Decided September 21, 1982.)

*Messrs. Matan, Rinehart & Smith, Mr. Eugene L. Matan* and *Ms. Ruth Freed,* for appellants.

*Messrs. Knepper, White, Arter & Hadden, Mr. Richard L. Miller* and *Mr. Charles R. Janes,* for appellee Boyd W. Bowden.

MOYER, J. This matter is before us on appeal from a judgment notwithstanding the verdict rendered by the Court of Common Pleas of Franklin County in favor of defendant-appellee Boyd W. Bowden, D.O.

Gilbert J. Wise, in his own right and as executor of the estate of his wife, sued Doctors Hospital North and four Columbus physicians for malpractice. The hospital and one of the physicians were dismissed from the suit prior to trial, and one other physician was dismissed during the trial. The case was submitted to the jury to determine the liability of defendants William D. Mitchell, D.O., and Boyd W. Bowden, D.O. The jury was unable to reach a verdict and was discharged. The court then granted the motion of defendant Dr. Bowden for judgment notwithstanding the verdict for the reason that plaintiffs had failed to present sufficient evidence on the issue of proximate cause. Retrial of the suit against Dr. Mitchell has been stayed pending our disposition of this appeal.

Plaintiff raises the following two assignments of error in support of his appeal:

"I. The trial court erred in granting judgment *non obstante veredicto* for defendant, Boyd W. Bowden, D.O., when plaintiffs-appellants adequately established causation with respect to the acts and omissions of this defendant and the alleged harm suffered by the deceased.

"II. The trial court erred in refusing to permit plaintiffs-appellants' witness Cyril Wecht, M.D., to testify as an expert within the meaning of Section 2743.43 of the Ohio Revised Code."

The decedent, Mrs. Ruth Wise ("decedent"), was admitted to Doctors Hospital North on April 9, 1978, after a fall in her home. There was evidence that she used a considerable amount of drugs, which severely debilitated her. She was placed in the intensive care unit where she was a difficult patient because of the deterioration of her brain. She required frequent turning on her bed by hospital personnel and frequent cleansing and bed sheet changes because of her incontinence. The nurses notes and the hospital records indicate that, on April 11, 1978, the decedent had a small reddened area in the coccyx area of her body. The reddened area, a decubitus ulcer or a bedsore, was treated routinely under the care of Dr. Mitchell until April 25, when drainage and a foul odor were noticed. Antibiotics were administered, and, on April 25, a chemical debriding agent was applied to the bedsore pursuant to Dr. Mitchell's orders. The debriding agent was used to clean the dead tissue from the bedsore; however, he did not note an ulcer in decedent's hospital record between April 25 and May

1, 1978. On April 30, the decubitus was increasing in size and the decedent continued to have a fever.

On May 1, 1978, Dr. Mitchell ordered surgical debridement by defendant. Defendant performed the debridement on May 3, by removing the dead tissue and enlarging the wound from the size of a quarter to the size of a fifty-cent piece. Defendant suspected the presence of a tunnel (rectal fistula) between the rectum and the bedsore, and requested Dr. Costin, a general surgeon, to determine whether a rectal fistula was present. On May 4, Dr. Costin noted the bedsore had changed dramatically, and defendant, upon arriving around 12:00 noon on May 4, confirmed the presence of progressive anerobic bacterial infection, which is an infection that can thrive in the absence of oxygen. Defendant immediately made arrangements for surgery in the operating room for debridement of the necrotic tissue that had developed overnight. During surgery, the decedent died as a result of septic shock due to an infection which had entered her blood stream and spread throughout her body. A culture taken from the ulcer during surgery on May 4 confirmed the presence of the deadly bacteria.

Plaintiff argues that the trial court erred in holding that plaintiff did not establish that any of defendant's acts were the proximate cause of the decedent's death, and that the trial court should, therefore, not have granted judgment notwithstanding the verdict.

Both parties have argued the importance of a statement by plaintiff's expert witness, Dr. Lehv, that decedent had a fifty-fifty chance of survival when defendant saw her at 12:00 noon on the day she died. However, both parties apparently ignored the fact that the trial court struck this testimony from the record. It was, therefore, not to be considered by the jury, the trial court or by us.

Plaintiff also argues that causation would have been established by the testimony of Dr. Wecht, which was improperly excluded by the trial court. Dr. Wecht's only testimony with respect to causation was the following statement:

"* * * I have an opinion that if the ulcer had been debrided and otherwise treated *earlier than the attempt on May 3,* which was aborted and continued on May 4, that with reasonable medical probability, Mrs. Wise would not have died when she did." (Deposition of Cyril Wecht, emphasis added.)

This testimony does not tend to prove causation as to defendant but, rather, as to Dr. Mitchell. It does not indicate whether the decedent had a probability of survival from the time defendant first saw her, which was May 3. Dr. Mitchell, on May 1, did not request the debridement to be performed as an emergency procedure. Therefore, the exclusion of the subject testimony had no effect on plaintiff's failure to prove causation as to defendant.

There was, however, sufficient evidence from which a jury could have concluded that defendant's activities proximately caused the decedent's death. The following question of and answer by Dr. Lehv indicate his opinion as to the decedent's chances of survival, even on the day she died:

"Q. [by Mr. Matan] Now, Doctor, based on reasonable medical certainty or probability, do you have an opinion as to whether or not this lady would have lived had proper medical care been given to her, and up to what point?

"* * *

"THE WITNESS: Obviously, the sooner that proper treatment had been rendered, the greater the chances of survival. I think that probably up to any point, even some point on the day that she died, if aggressive treatment had been taken and she had been given the right fluids and blood and whatever else was needed and operated on rapidly, she probably could have survived at least from this problem."

While it is true that Dr. Lehv, immediately after giving the testimony quoted above, testified he had no opinion as to whether decedent had a probability of survival at the time defendant saw her at 12:00 noon on May 4, defendant did see the decedent on May 3. Dr. Lehv's testimony indicates that on May 3, and probably even on May 4, it was probable that the decedent would have survived had she been given proper care.

Defendant himself also offered testimony which could support a finding of causation when he answered a question on cross-examination as follows:

"[Q. by Mr. Matan] If this lady at 10:00 o'clock — if you had seen this lady at 10:00 o'clock — you would have had a 70 or 80 percent better chance of saving her, would you not?

"A. I believe that, yes."

Since defendant had already treated decedent on the day prior to the time referred to in this testimony, his testimony indicates that she did have a probability of survival at that time.

In ruling on a motion for judgment notwithstanding the verdict, the trial court must construe the facts established in the record most strongly in favor of the party against whom the motion is made. *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275 [74 O.O.2d 427]. The court may not consider the weight of the evidence or the credibility of the witnesses, and, where there is substantial evidence to support the position of the party against whom the motion is made, the motion must be denied. *Id.* Construing the testimony of Dr. Lehv and defendant most strongly in favor of plaintiff, we hold that reasonable minds could reach different conclusions on the issue of causation. The motion for judgment notwithstanding the verdict should have been overruled. Plaintiff's first assignment of error is sustained.

In support of his second assignment of error, plaintiff argues that the trial court erred in refusing to permit plaintiff's witness, Cyril Wecht, M.D., to testify as an expert pursuant to R.C. 2743.43(A)(2). At the time of the trial in this action, R.C. 2743.43 was superseded by Evid. R. 601(D), but the rule incorporates the provisions of the statute and the arguments made by the parties therefore apply to Evid. R. 601(D).

Evid. R. 601(D) reads in part as follows:

"Every person is competent to be a witness except:

"* * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university."

Consideration of the admissibility of Dr. Wecht's testimony raises two issues. The first is whether the doctor's testimony related to the "issue of liability" in the claim. The second is whether Dr. Wecht devotes "three-fourths of his professional time to the active clinical practice" of medicine.

Plaintiff claims that Dr. Wecht's testimony pertained only to causation, which is an issue of damages and not liability. He relies upon the concurring opinion of McCormac, J., in the case of *McCrory* v. *State* (March 27, 1980), No. 79AP-621, unreported, affirmed (1981), 67 Ohio St. 2d 99 [21 O.O.3d 63]. Judge McCormac explained the division between liability and damage issues as follows:

"R.C. 2743.43(A) restricts expert testimony in a medical claim only on the liability issues. The medical claim in this case was based upon negligence. The lia-

bility issues are duty and breach of duty, liability being defined as responsibility for conduct. The damage issues are proximate cause and damages. R.C. 2743.43 was not intended to apply to expert testimony on all of the issues otherwise the restrictive adjective liability would not have been used. The restriction applies only to an expert testifying as to fault. So far as pertinent herein, Dr. Buchanan's testimony related only to the proximate cause and damages. As to these issues, he was not restricted by R.C. 2743.43, even though technically he may not have met the qualifications of R.C. 2743.43(A)(2) * * *." *Id.* at 918.

Judge McCormac's opinion appropriately reflects the intention of the legislature in enacting R.C. 2743.43 and of the Supreme Court in adopting Evid. R. 601(D). The purpose of the restriction on expert testimony is to discourage, as far as possible, testimony regarding the proper standard of care by a "professional witness" or a physician who is sequestered in his laboratory and has no first-hand knowledge of the daily care of patients. The physician who spends his entire professional time some place other than treating patients, or who is in great demand as a witness because he is recognized as an "expert," may indeed be the best witness to testify as to whether a particular action by the physician was the likely cause of the harmful condition. Daily patient contact is not necessary to the accumulation of such knowledge. However, such a witness often has no knowledge about the norms of patient care and the standards of physician conduct appurtenant thereto. Dr. Wecht's testimony was not related to the liability issues but was related to and competent on the issue of causation and should have been admitted.

Plaintiff argues in the alternative that Dr. Wecht does spend three-fourths of his professional time in the active clinical practice of medicine. We agree. Defendant submits that "professional time" includes all employment activities. Thus, according to defendant, "professional time" includes the forty hours per week during which Dr. Wecht is employed as a county commissioner. Defendant argues that, even though Dr. Wecht spends forty hours per week in the practice of medicine, this cannot amount to three-fourths of his "professional time."

We construe the term "professional time" to refer to the time spent in the witness' field of licensure. Therefore, if Dr. Wecht spends forty hours per week in the practice of medicine, thirty hours of which is devoted to the "active clinical practice," it is irrelevant that he spends an additional forty hours in some other pursuit. While we recognize that a physician could work four hours a week, three hours of which were devoted to the active clinical practice, and thereby be competent under Evid. R. 601(D) to testify, such a defect in the rule should be changed by an amendment rather than by a restrictive interpretation of the rule. Furthermore, the rule merely establishes the competence of the witness and the parties are free to attack the credibility of the witness who spends little time in the clinical practice.

We hold that the term "professional time" used in Evid. R. 601(D) means the time spent by a licensed professional in the pursuit of his or her profession. Dr. Wecht was competent to testify, and the second assignment of error is sustained.

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

REILLY and NORRIS, JJ., concur.