CELMER ET AL., APPELLEES, *v.* RODGERS ET AL., APPELLANTS.

[Cite as *Celmer v. Rodgers,* 114 Ohio St.3d 221, 2007-Ohio-3697.]

(No. 2006–0305—Submitted January 23, 2007—Decided July 25, 2007.)

222

---

**O'DONNELL, J.**

{¶ 1} Dr. Edward Walker, Dr. Han Soo Shin, and Radiology Associates of Warren, Inc., appeal from a decision of the Trumbull County Court of Appeals, which affirmed a trial court order denying their oral motion to exclude Dr. Jay Thompson from offering expert testimony on behalf of Carol and Michael Celmer in this medical malpractice action.

{¶ 2} The issue presented on appeal concerns the application of Evid.R. 601(D), which specifies that only those who are licensed to practice medicine and who devote at least one-half of their professional time to the active clinical practice of medicine may testify in a civil action on the issue of a physician's liability with respect to the diagnosis, care, or treatment of a person. We are asked to determine whether, in a situation where a trial is originally scheduled and then continued at the request of defense counsel, then stayed due to the insolvency of a defendant's insurance carrier, and where more than two years after the original trial date, the expert witness no longer devotes at least one-half of his professional time to the active clinical practice of medicine, a trial court may permit that witness to testify as an expert at trial.

{¶ 3} The record before us reveals that in 1997 and 1998, Carol Celmer complained to her family physician, Dr. Sharon George, about a lump in her right breast. Dr. George referred her for diagnostic testing, and as a result, Dr. Edward Walker read a December 1998 mammogram and diagnosed the lump in her breast as a benign cyst. Dr. Han Soo Shin also reviewed the same mammogram and a sonogram and determined that neither showed anything suspicious. Based on these opinions and her own interpretation of these tests, George advised Celmer that she did not have cancer.

{¶ 4} Thereafter, in December 1999, Celmer obtained a new mammogram, revealing a mass in her right breast, which a biopsy showed to be a malignant tumor. As a result, she underwent chemotherapy and surgery for its removal, though the cancer eventually spread to other organs.

{¶ 5} Following her surgery, the Celmers' legal counsel contacted Dr. Jay Thompson, who became her expert witness in this case. After reviewing her X-ray films, Thompson concluded that the cancer in her breast could have been discerned in the 1997 and 1998 mammograms and opined that the failure to identify the cancer constituted a deviation from the standard of care.

{¶ 6} Thereafter, on April 28, 2000, the Celmers filed a medical malpractice action against Radiology Associates, Warren Radiologists, Inc., St. Joseph Health Center, and Drs. Walker, Shin, Rodgers, Goettsch, and George.

{¶ 7} At a pretrial conference held on March 20, 2001, the trial court scheduled the case for trial on March 11, 2002. However, in June 2001, the court continued the trial to June 17, 2002, at the request of Drs. Walker and Shin and Radiology Associates. Subsequently, on October 29, 2001, the court granted Dr. George's motion to stay all proceedings as a result of an insolvency proceeding in the state of New York involving her insurance carrier. The stay remained in effect until January 2003, when the court granted the Celmers' motion and rescheduled trial for February 23, 2004. However, on April 14, 2003, at the request of Dr. George and over the Celmers' objection, the trial court continued the February 23 trial date to May 18, 2004.

{¶ 8} The court began trial in May 2004 against Drs. Walker and Shin and Radiology Associates. On the second day of trial, the court permitted defense counsel to voir dire Dr. Thompson regarding his competency to testify as an expert witness on behalf of the Celmers. During voir dire, Thompson acknowledged that he held a license to practice medicine in Ohio and that between February 1997 and October 2003, he had spent at least one-half of his professional time in the active clinical practice of radiology but admitted that as of November 2003, he had resided in the state of Florida and had not engaged in the practice of medicine. He further testified that four days before commencement of trial, he had accepted a new position with a radiology practice group in Ohio, where he would receive training to interpret computer radiology results.

{¶ 9} Following Thompson's voir dire, defense counsel moved to preclude his expert testimony, arguing that he no longer qualified as a medical expert witness pursuant to Evid.R. 601(D) because, at the time of his voir dire examination, he did not devote one-half of his professional time to the active clinical practice of medicine. The trial court overruled the motion, observing that the defense counsel had requested a trial continuance and noting that had the case been tried when first scheduled, the issue would never have arisen. The court also observed that the parties did not dispute that Thompson met the requirements of Evid.R. 601(D) during 1997 to 1999, the period of time relevant to his testimony regarding the standard of care exercised in this case.

{¶ 10} Pursuant to the court's ruling, Thompson testified at trial that Walker and Shin deviated from the standard of care when they failed to diagnose Celmer with cancer based upon the mammograms and the sonograms. Following deliberations, the jury returned verdicts in favor of the Celmers of $85,000 against Dr. Walker and Radiology Associates and $115,000 against Dr. Shin and Radiology Associates.

{¶ 11} Walker, Shin, and Radiology Associates filed a notice of appeal to the Trumbull County Court of Appeals, alleging that the trial court had abused its discretion by permitting Thompson to testify as an expert witness because he did not devote one-half of his professional time to the active clinical practice of medicine at the time of trial, as required by Evid.R. 601(D). The appellate court rejected that argument, holding that the court did not abuse its discretion because Evid.R. 601(D) permits flexibility in determining whether an expert meets the requirements of the rule. *Celmer v. Rodgers,* Trumbull App. No. 2004–T–0074, 2005-Ohio-7054, 2005 WL 3610478, ¶ 24.

{¶ 12} We granted discretionary review to examine the issue of whether, in conformity with Evid.R. 601(D), a trial court may permit a witness to offer expert testimony on the liability of a physician if that witness at the time of trial does not devote one-half of his professional time to the active clinical practice of medicine. Walker, Shin, and Radiology Associates urge that the court should strictly construe Evid.R. 601(D) to mean that a witness cannot testify as an expert on the issue of liability in a civil action against a physician unless, at the time of the testimony, that witness devotes one-half of his professional time to the active clinical practice of medicine. The Celmers respond that the rule should be liberally construed, arguing that a strict interpretation would lead to an unjust result.

{¶ 13} Evid.R. 601 identifies those competent to testify as witnesses, stating:

{¶ 14} "Every person is competent to be a witness except:

{¶ 15} " * * *

{¶ 16} "(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school."

{¶ 17} This rule incorporates much of R.C. 2743.43 but supersedes (A)(2) of that section, which requires an expert to devote three-quarters of his or her professional time to active clinical practice. See 1980 Staff Notes to Evid.R. 601(D) and *Wise v. Doctors Hosp. N.* (1982), 7 Ohio App.3d 331, 7 OBR 427, 455 N.E.2d 1032.

{¶ 18} Thus, Evid.R. 601(D) excepts from those competent to be witnesses persons who fail to meet its dual requirements, i.e., the witness both is "licensed

to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state" and "devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school."

{¶ 19} A trial court has discretion to determine whether a witness is competent to testify as an expert, and the trial court's decision will not be reversed absent a clear showing that the court abused its discretion. *McCrory v. State* (1981), 67 Ohio St.2d 99, 105, 21 O.O.3d 63, 423 N.E.2d 156, citing *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397, paragraph eight of the syllabus; *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 10 O.O.3d 332, 383 N.E.2d 564; *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708; *Akron v. Pub. Util. Comm.* (1966), 5 Ohio St.2d 237, 34 O.O.2d 467, 215 N.E.2d 366; *Tully v. Mahoning Express Co.* (1954), 161 Ohio St. 457, 53 O.O. 354, 119 N.E.2d 831. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude, in reaching its decision, was arbitrary, unreasonable, or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 20} In *McCrory*, 67 Ohio St.2d at 103, 21 O.O.3d 63, 423 N.E.2d 156, we considered whether the "active clinical practice" requirement bars the testimony of physicians who do not treat patients directly. That case involved a physician-witness employed by a pharmaceutical company to develop and evaluate new drugs. Over an objection that the witness did not meet the "active clinical practice" requirement, the trial court permitted the physician to testify as an expert.

{¶ 21} On review in this court, we rejected the narrow interpretation of the term "active clinical practice," explaining that "the purpose of the [requirement] is to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise." Id. Based upon the purpose of the requirement, we concluded there that the trial court did not abuse its discretion, as "the phrase 'active clinical practice' includes more than those physicians who regularly treat patients directly * * *." Id. at 104, 21 OO.3d 63, 423 N.E.2d 156.

{¶ 22} Similarly, Chief Justice Moyer, then sitting as a member of the Tenth District Court of Appeals, identified the intent of Evid.R. 601(D) and its statutory counterpart: "The purpose of the restriction on expert testimony is to discourage, as far as possible, testimony regarding the proper standard of care by a

'professional witness.'" *Wise,* 7 Ohio App.3d at 334, 7 OBR 427, 455 N.E.2d 1032 (explaining that "the rule merely establishes the competence of the witness and the parties are free to attack the credibility of the witness who spends little time in the clinical practice").

{¶ 23} Based on the foregoing, we reiterate that the purpose of Evid.R. 601(D) is to prohibit a physician who makes his living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients. See *McCrory,* 67 Ohio St.2d at 103–104, 21 O.O.3d 63, 423 N.E.2d 156.

{¶ 24} In addition, Evid.R. 601(D) operates in conformity both with Evid.R. 104(A), which provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence *shall be determined by the court,*" and with Evid.R. 102, which states, "The purpose of these rules is to provide procedures for the adjudication of causes *to the end that the truth may be ascertained and proceedings justly determined.*" (Emphasis added.)

{¶ 25} Evid.R. 601(D) uses the present tense in providing that a person is unable to offer medical expert testimony unless that person *is* licensed to practice medicine and *devotes* at least one-half of his or her professional time to active clinical practice. This, however, does not preclude a trial court from exercising discretion in an appropriate case to determine that a physician is competent to testify, as in this case, where the witness would have qualified as an expert but for defense continuances and a stay of proceedings resulting from the insolvency of a defendant's carrier. Given the specific facts of this case and Dr. Thompson's competency to testify as an expert at the originally scheduled March 2002 trial, his disengagement from the active clinical practice of medicine prior to the May 2004 trial date did not render him incompetent to testify.

{¶ 26} In this case, the record supports the conclusion that Dr. Thompson satisfied the requirements of Evid.R. 601(D) at the time the cause of action accrued, at the time of filing suit, and during the first three years of this litigation. As the trial court noted, the Evid.R. 601(D) issue in this case would not have arisen had the court commenced trial as originally scheduled. On these facts, Thompson's hiatus from the practice of medicine should not render him incompetent to testify in this matter and does not cause him to become a "professional witness." As the appellate court recognized, the trial court's decision here was not arbitrary, unreasonable, or unconscionable; thus, the trial court did not abuse its discretion when it qualified Dr. Thompson to testify as an expert witness in this case.

{¶ 27} Generally, an expert witness in a medical malpractice action must meet the requirements of Evid.R. 601(D) at the time the testimony is offered at trial.

But the facts here are an exception to that general rule. In a medical malpractice action where trial continuances requested by the defense and the insolvency of a defendant's carrier delay trial for such time as the plaintiff's medical expert no longer devotes one-half of his professional time to the active clinical practice of medicine, and where the medical expert is not a professional witness, a trial court has discretion to permit that witness to testify as an expert at trial.

{¶ 28} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER and LUNDBERG STRATTON, JJ., concur.

LANZINGER, J., concurs in syllabus and judgment only.

MOYER, C.J., O'CONNOR and CUPP, JJ., dissent.

---

**O'CONNOR, J., dissenting.**

{¶ 29} Because I believe that this case presents a unique scenario that does not provide the court with a sufficiently meaningful opportunity to explore the important legal and policy questions it implicates, I believe that the appeal should be dismissed as having been improvidently accepted.

{¶ 30} I would further hold that the court of appeals' holding should be limited to this case and should not be cited as authority in ensuing cases, except by the parties inter se.

{¶ 31} I therefore dissent from the majority's decision to affirm.

---

**CUPP, J., dissenting.**

{¶ 32} Because I believe that a plain reading of Evid.R. 601(D) must determine this case, I respectfully dissent.

{¶ 33} It appears uncontroverted that appellees' expert was competent to testify (1) when the alleged malpractice occurred, (2) when the trial was originally scheduled in 2002, and (3) when appellees' expert continued his practice on a reduced basis until the fall of 2003. Presumably, appellees' expert would be competent to testify if the trial were held today. Evid.R. 601(D) supports these points of agreement; it also rendered appellees' expert incompetent to testify at the time of the actual trial.

{¶ 34} Evid.R. 601(D) uses the present tense to describe when a person is competent to give medical testimony as an expert. Unless the witness "*is* licensed to practice medicine" and "*devotes* at least one-half of his or her professional time to the active clinical practice," the witness is not competent to give medical testimony as an expert. (Emphasis added.) A plain application of this rule leads unavoidably to the conclusion that both in April 2004, when appellees' expert gave his deposition, and in May 2004, when appellees' expert testified at trial over objection, he was not competent to provide such testimony.[1] At neither time was appellees' expert then devoting one-half of his professional time to active clinical practice as required by Evid.R. 601(D). Instead, appellees' expert had left his Ohio radiology practice in October 2003 to reside in Florida. It was not until sometime after the May 2004 trial that he returned to active clinical practice in Ohio. According to the clear language of Evid.R. 601(D), appellee's expert was not competent to testify at the deposition or at the trial.

{¶ 35} This conclusion, however, is not meant to countenance the use of Evid.R. 601(D), together with repeated trial delays, as a litigation strategy to render an opposing party's expert incompetent. Nor do I conclude that a temporary absence of short duration, such as a sabbatical, would automatically render an otherwise qualified medical expert incompetent to testify.

{¶ 36} The rule amendment process, however, is a more appropriate mechanism to address the policy concerns raised by appellees and to weigh the advisability of various options and alternatives. It may well be that the current requirements of Evid.R. 601(D) are overly restrictive. Other states have adopted variations of the rule. These variations often require a proposed medical expert witness to have been engaged in active clinical practice either within a certain period, typically a year, before the alleged negligence or at the time of the alleged negligence. See, generally, Ala.Code 6–5–548(b) and (c); Ariz.Rev.Stat. 12–2604(A)(2); Fla.Stat. 766.102(5); Mich.Comp.Laws 600.2169(1); N.C.G.S. 8C–1, Rule 702(b)(2); Tenn.Code Ann. 29–26–115(b); Va.Code Ann. 8.01–581.20(A). Colorado requires no demonstration of having engaged in active clinical practice, but requires only that the expert was "substantially familiar" with the applicable standard of care at the time of the alleged negligence. Colo.Rev.Stat. 13–64–401.

{¶ 37} In the present case, however, because the duty of the trial court is to apply the plain meaning of the rule as it exists, the ruling contrary to such

---

1. The issue of whether a deposition taken of an expert witness, competent under Evid.R. 601(D) at the time of the taking of the deposition, may be offered in evidence at a later trial when the expert is no longer competent under Evid.R. 601(D) is not before us. Consequently, no opinion is expressed regarding that situation.

constituted an abuse of discretion. The court of appeals' decision affirming the trial court should be reversed.

MOYER, C.J., concurs in the foregoing opinion.

---

Norman A. Moses and Mary Ellen Brannigan, for appellees.

Roetzel & Andress, L.P.A., Thomas A. Treadon, Stacy A. Ragon, Michael J. Fuchs, and Douglas G. Leak, for appellants.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; Linton & Hirshman and Tobias J. Hirshman, urging affirmance for amicus curiae, Ohio Academy of Trial Lawyers.