DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Amber Hong ran a red light and collided with a car that Catharine Scott was driving. According to Ms. Scott, she began experiencing numbness and pain in her left arm and hand a few hours after the collision. For the next two and a half years, she sought treatment from a number of doctors to no avail. A specialist eventually diagnosed her with thoracic outlet syndrome. She sued Ms. Hong, seeking to recover for her injuries. A jury found in favor of Ms. Hong. Ms. Scott has appealed, arguing that the trial court improperly allowed Ms. Hong's medical expert to testify, that it incorrectly excluded some of her medical bills, and that the jury's verdict is against the manifest weight of the evidence. Ms. Hong has cross-appealed, arguing that the court should have ordered Ms. Scott to pay her costs. This Court affirms because Ms. Scott forfeited her argument under Rule 703 of the Ohio Rules of Evidence, she did not present any evidence that the excluded medical bills were causally related to the collision, *Page 2 
she did not move to compel Ms. Hong's expert to comply with her subpoena, the jury's verdict is supported by some competent, credible evidence, and the trial court exercised proper discretion when it denied Ms. Hong's motion for costs.
 FACTS {¶ 2} Ms. Scott testified that, before the collision, she was a competitive cyclist and held a full-time job. She said that, after the collision, she initially felt fine, but began having numbness and pain in her left arm and fingertips later that evening. According to her, it also felt like there was a shard of glass in her eye. She saw her primary care physician the next day. When, according to her, the pain in her arm did not get any better, she went to her doctor again. Although her doctor ordered several tests, none of them indicated any trauma. She also began seeing a chiropractor, who she said, helped reduce, but did not eliminate, her pain.
 {¶ 3} Ms. Scott testified that, because of the pain, she began to tire more easily. She said she could no longer race her bike, hold a full-time job, or do as much housework. Although she continued seeking treatment from a number of doctors, none of them was able to cure her. Her aunt eventually recommended that she see Dr. Michael Kaplan, a pain management specialist. Dr. Kaplan diagnosed her with thoracic outlet syndrome and referred her to Dr. Julie Freischlag, a vascular surgeon. Dr. Freischlag also diagnosed Ms. Scott with thoracic outlet syndrome and told her that, if she removed one of her ribs, it might relieve the pressure on her nerves. Ms. Scott had the surgery, which, she said, reduced, but did not eliminate her pain.
 {¶ 4} Ms. Scott sued Ms. Hong for negligence, seeking to recover for her injuries. Because the parties' medical experts were unavailable for trial, their testimony was videotaped ahead of time. Ms. Scott objected to the testimony of Ms. Hong's expert, Dr. Dennis Glazer, because he did not produce all of the documents she subpoenaed and he testified about her *Page 3 
psychological condition, even though he is an orthopedic surgeon. The trial court overruled her objections. The court also prohibited Ms. Scott from submitting some of her medical bills.
 {¶ 5} A jury found in favor of Ms. Hong. Ms. Hong moved for an award of costs, but the court denied her motion. Ms. Scott has appealed, assigning four errors. Ms. Hong has cross-appealed, assigning one error regarding her motion for costs.
 MENTAL CONDITION {¶ 6} Ms. Scott's first assignment of error is that the trial court incorrectly allowed Dr. Glazer to testify about her mental condition. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage, 31 Ohio St. 3d 173, paragraph two of the syllabus (1987).
 {¶ 7} Ms. Scott has argued that an orthopedic surgeon is not qualified to give an opinion about mental illness. Rule 702(B) of the Ohio Rules of Evidence provides that a witness may testify as an expert if he "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."
 {¶ 8} Dr. Glazer testified that he had reviewed Ms. Scott's medical history and that on one of her records "[t]here was a note there, apparently Mrs. Scott had had significant psychological problems. . . . [a]nd she had been in counseling for about 12 years." When asked if there was anything significant about his review of Ms. Scott's psychological records, he answered: "[w]ell, only in regards to the fact that she does have psychological issues, and when you're dealing with pain problems, they, they can figure into it prominently. It can alter people's perception of pain or the presence of pain, and if you're . . . contemplating any type of surgical intervention you've got to be very careful with people with psychological issues." While Dr. Glazer noted that he was not a psychologist or psychiatrist, he said that "just dealing with what I *Page 4 
would call a discretionary surgery with a questionable diagnosis and a questionable outcome, these things can, you know, somebody with . . . psychological issues, that can figure into it very prominently."
 {¶ 9} This Court concludes that Dr. Glazer did not testify outside the scope of his expertise. He said that he had been a board-certified orthopedic surgeon since 1975 and had treated approximately 28,000 patients. He did not diagnose Ms. Scott with psychological problems, but only said that, in his experience, a surgeon should be cautious when deciding how to treat someone who has been diagnosed as having psychological problems. The trial court exercised proper discretion when it determined that Dr. Glazer was qualified to testify about the standard of care for a surgeon treating someone with psychological problems.
 {¶ 10} Ms. Scott has also argued that Dr. Glazer's opinion should have been excluded under Rule 703 of the Ohio Rules of Evidence. Rule 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Ms. Scott has argued that it was improper for the court to allow Dr. Glazer to testify about her psychological problems because he did not examine her for psychological issues and the medical records he relied on were not in evidence.
 {¶ 11} Although Ms. Scott argued at trial that Dr. Glazer was not qualified to express an opinion on her psychological condition and that his testimony on that subject was more prejudicial than probative, she did not argue that his testimony should be excluded under Rule 703. She, therefore, has forfeited that issue. Holman v. Grandview Hosp. Med.Ctr., 37 Ohio App. 3d 151, 157 (1987) ("Issues not raised and tried in the trial court cannot be raised for the first time on appeal."). Her first assignment of error is overruled. *Page 5 
 MEDICAL EXPENSES {¶ 12} Ms. Scott's second assignment of error is that the trial court incorrectly granted Ms. Hong's motion in limine that prohibited her from introducing some of her medical bills. As an initial matter, this Court notes that Ms. Scott has improperly addressed her argument to the trial court's interlocutory decision on Ms. Hong's motion rather than her proffer of the evidence at trial. See State v. Grubb,28 Ohio St. 3d 199, paragraph two of the syllabus (1986) ("At trial it is incumbent upon a [party], who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.").
 {¶ 13} Even if Ms. Scott had assigned her argument correctly, it is without merit. Although she is correct that medical bills are prima facie evidence of the reasonableness and necessity of medical charges, she did not submit any evidence to establish that she incurred the medical expenses that the court excluded to treat injuries she sustained in the collision. The Ohio Supreme Court has held that, "[e]xcept as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion." Darnell v. Eastman, 23 Ohio St. 2d 13, 17 (1970). The trial court properly excluded medical bills for treatment that Ms. Scott did not establish through expert testimony was for injuries from the collision. Her second assignment of error is overruled. *Page 6 
 SUBPOENA {¶ 14} Ms. Scott's third assignment of error is that the trial court incorrectly denied her motion in limine and allowed Dr. Glazer to testify, even though he failed to comply with her subpoena duces tecum. Ms. Scott had requested "[a]ny and all reports, agreements, documents, correspondence, invoices, and/or statements" regarding work he had previously done for Ms. Hong's lawyer or Ms. Hong's insurance company.
 {¶ 15} Ms. Scott has again assigned her error to the court's interlocutory ruling on a motion in limine instead of her objection to Dr. Glazer's testimony at trial. Even if she had correctly assigned her argument, this Court notes that Ms. Scott never moved to compel Dr. Glazer to produce the requested documents. At the time of the subpoena, Rule 45(C)(2)(b) of the Ohio Rules of Civil Procedure provided that "a person commanded to produce under . . . this rule may, within fourteen days after service of the subpoena or before the time specified for compliance if such time is less than fourteen days after service, serve upon the party or attorney designated in the subpoena written objections to production. If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production. . . ."
 {¶ 16} The record does not indicate when Ms. Scott served the subpoena on Dr. Glazer. She served a copy of it on Ms. Hong's lawyer on November 17, 2007. On November 27, 2007, Dr. Glazer responded to the subpoena, refusing to produce the requested documents. He asserted that such documents did not exist because his files are organized by patient name rather than insurance company or lawyer. He also asserted that, even if he could extract the requested *Page 7 
information, he could not provide it in a manner that would comply with federal privacy laws. He did provide a letter estimating that he conducts approximately 36-40 independent medical examinations a year, which are predominately defense examinations.
 {¶ 17} Ms. Scott sought to exclude Dr. Glazer's testimony because he did not comply with her subpoena. Ms. Scott, however, failed to pursue her remedy under Rule 45(C). This Court, therefore, concludes that the trial court exercised proper discretion when it allowed Dr. Glazer to testify. Furthermore, Ms. Scott has not demonstrated that his refusal to produce the requested documents prejudiced her case. "An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." Beard v. Meridia HuronHosp., 106 Ohio St. 3d 237, 2005-Ohio-4787, at ¶ 35; see also Civ. R. 61. During his deposition, Dr. Glazer testified that he does approximately four independent medical examinations for Ms. Hong's lawyers each year. He said that he had earned $2800 for examining Ms. Scott and that he was being paid an additional $1400 for the deposition. When Ms. Scott cross-examined him about the amount, Dr. Glazer admitted that his total bill might be even higher. He also said that he earns between $35,000 and $40,000 per year as an expert witness. Ms. Scott, therefore, was still able to insinuate that, in light of Dr. Glazer's repeated work for Ms. Hong's lawyer and the substantial income he earns performing independent medical examinations, his testimony might be biased in favor of Ms. Hong. Her third assignment of error is overruled.
 MANIFEST WEIGHT {¶ 18} Ms. Scott's fourth assignment of error is that the jury's verdict is against the manifest weight of the evidence. In State v.Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶ 26, the Ohio Supreme Court held that the test for whether a judgment is against the weight of *Page 8 
the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in C.E. Morris Co. v. FoleyConstr. Co., 54 Ohio St.2d 279." Id. at ¶ 24. The "explanation" inC.E. Morris was that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (quoting C.E. Morris Co., 54 Ohio St. 2d at 279); but see Huntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979,2007-Ohio-4344, at ¶¶ 17-75 (Dickinson, J., concurring). This Court, therefore, must affirm if the jury's verdict "is supported by some competent, credible evidence." Wilson, 2007-Ohio-2202, at ¶ 32.
 {¶ 19} Both of Ms. Scott's experts opined that she has thoracic outlet syndrome, but they were inconsistent about the type. Dr. Kaplan said it is vasogenic, meaning that it affects her blood vessels, while Dr. Freischlag said it is neurogenic, meaning that it affects her nerves. Dr. Glazer said that Ms. Scott's symptoms are inconsistent with vasogenic thoracic outlet syndrome because she complains of numbing and tingling rather than coldness and blueness. He said her symptoms are inconsistent with neurogenic thoracic outlet syndrome because the location of the numbing has varied. He explained that there are three nerves that run into the hand and that neurogenic thoracic syndrome commonly affects the ulnar nerve. Ms. Scott, however, has also complained of numbness in areas of her hand that are supplied by the median nerve. Dr. Glazer said that an alternative explanation for Ms. Scott's condition is hyper-adduction syndrome, in which an artery presses against the pectoralis minor muscle in the shoulder where it goes into the arm. He said the condition can mimic thoracic outlet syndrome and can be present in thin people like Ms. Scott. *Page 9 
 {¶ 20} Dr. Glazer also testified that, even if Ms. Scott has thoracic outlet syndrome, it could have been caused by something other than the collision. He noted that there was no evidence that the collision wrenched or pulled her shoulder or hyperflexed her neck. He said that repetitive activities or lifting can cause thoracic outlet syndrome, and noted that Ms. Scott said she would ride her bike 50 miles a day while leaning over the handlebars. He said that would be enough to cause musculoskeletal pains.
 {¶ 21} While Dr. Kaplan and Dr. Freischlag opined that Ms. Scott's thoracic outlet syndrome was caused by the collision, they admitted it could also come from repetitive use or heavy lifting. Ms. Scott's doctors admitted that they were not aware that Ms. Scott competed in a bike race soon after the collision, that she had travelled to Colorado, Florida, and Mexico since the collision, or that she had been skiing repeatedly, including as part of one of her part-time jobs.
 {¶ 22} Ms. Scott has argued that, because there was no dispute that her eye was injured in the collision, the jury's verdict of zero damages was against the manifest weight of the evidence. She testified, however, that, although she thought there was a shard of glass in her eye, "[t]here was nothing found," by her primary care physician. This Court, therefore, concludes that, in light of Dr. Glazer's testimony that there was an alternative explanation for Ms. Scott's symptoms and her doctors' admissions that, even if Ms. Scott has thoracic outlet syndrome, it could have been caused by something other than the automobile collision, the jury's verdict is supported by some competent, credible evidence. Ms. Scott's fourth assignment of error is overruled. *Page 10 
 COURT COSTS {¶ 23} In her cross-appeal, Ms. Hong has assigned one error, arguing that the trial court incorrectly denied her motion for costs. Rule 54(D) of the Ohio Rules of Civil Procedure provides that, "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."
 {¶ 24} Ms. Hong has argued that she should be reimbursed for the cost of obtaining deposition transcripts, videotaping Dr. Glazer's deposition, playing Dr. Glazer's testimony at trial, and subpoenaing the police officer who responded to the collision. "Pursuant to Civ. R. 54(D), the [trial] court has discretion as to how the costs of an action shall be assessed." State ex rel. Estate of Hards v. Klammer,110 Ohio St. 3d 104, 2006-Ohio-3670, at ¶ 14 (quoting State ex rel. Fant v. Reg'lTransit Auth., 48 Ohio St. 3d 39, 39 (1990)). "[T]he rule is not a grant of absolute right for court costs to be allowed to the prevailing party." State ex rel. Gravill v. Fuerst, 24 Ohio St. 3d 12, 13 (1986). "[T]he phrase `unless the court otherwise directs' grants the court discretion to order that the prevailing party bear all or part of . . . her own costs." Vance v. Roedersheimer, 64 Ohio St. 3d 552, 555 (1992) (quoting Civ. R. 54(D)). This Court concludes that the trial court exercised proper discretion when it denied Ms. Hong's motion for costs. Her assignment of error is overruled.
 CONCLUSION {¶ 25} Ms. Scott forfeited her argument that Dr. Glazer's testimony was improper under Rule 703 of the Ohio Rules of Evidence, she did not present any evidence that the medical bills the court excluded were causally related to the collision, she did not move to compel Ms. Hong's expert to comply with her subpoena, the jury's verdict is not against the manifest weight of the *Page 11 
evidence, and the trial court properly denied Ms. Hong's motion for costs. The judgment of the Wayne County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellants/cross-appellees.
CARR, P. J., BAIRD, J., CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1