[Cite as *Bolen v. Mohan*, 2017-Ohio-7911.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

RONNIE R. BOLEN, et al.

    Appellees/Cross-Appellants

    v.

DR. GEETHA MOHAN, et al.

    Appellants/Cross-Appellees

C.A. No.    16CA011000

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    11CV1722258

DECISION AND JOURNAL ENTRY

Dated: September 29, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellants/Cross-Appellees, Geetha Mohan, M.D. and North Ohio Heart Center, Inc. ("NOHC"), appeal the judgment of the Lorain County Court of Common Pleas. Plaintiffs-Appellees/Cross-Appellants, Ronnie and Carol Bolen also appeal the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, we affirm in part, reverse in part, and remand.

I.

{¶2} Mr. Bolen began having heart problems in 2005. At that time, Mr. Bolen received treatment from various physicians including Dr. Mohan, an adult cardiologist who practices interventional cardiology with NOHC. Although Mr. Bolen underwent a number of procedures, no complications arose and Mr. Bolen was discharged. However, on August 8, 2008, Mr. Bolen was admitted to Mercy Regional Medical Center after complaining of chest pressure. Consequently, on August 11, 2008, Dr. Mohan performed a cardiac catheterization and a balloon

angioplasty on Mr. Bolen. Following the balloon angioplasty, Dr. Mohan decided to stent the area of blockage. However, after attempting to place three stents without success, Dr. Mohan determined that the first stent had come off the balloon during the procedure and was still in Mr. Bolen's left main coronary artery. The following day, Dr. O'Shaugnessy performed a cardiac catheterization on Mr. Bolen to determine the location of the stent and whether it could be removed. Dr. O'Shaugnessy ultimately removed the stent by performing open-heart surgery on August 13, 2008.

{¶3} Thereafter, Mr. Bolen and his wife, Carol Bolen, filed a complaint for damages resulting from medical malpractice against Dr. Mohan and NOHC. The matter ultimately proceeded to a trial and the jury returned a verdict in favor of the Bolens in the amount of $514,682.68.

{¶4} Following the jury verdict, the parties filed a number of post-judgment motions. Dr. Mohan and NOHC filed a motion for judgment notwithstanding the verdict or, in the alternative for a new trial, which was denied. Dr. Mohan and NOHC also filed a motion to enforce the non-economic damages cap pursuant to R.C. 2323.43. The trial court granted that motion, limiting the Bolen's non-economic damages to $269,048.04. The Bolens filed a motion for prejudgment interest, which the trial court denied without a hearing.

{¶5} Dr. Mohan and NOHC filed a timely appeal, raising three assignments of error for our review. The Bolens also filed a timely appeal, raising one assignment of error. As Dr. Mohan and NOHC's first and second assignments of error raise similar issues, we elect to address them together.

II.

**Dr. Mohan and NOHC's Assignment of Error I**

**The trial court erred in not granting directed verdict and/or denying [Dr. Mohan and NOHC's] motion for judgment notwithstanding the verdict because Dr. Diaco was not competent to testify under Evid.R. 601(D).**

**Dr. Mohan and NOHC's Assignment of Error II**

**The trial court erred in not granting directed verdict and/or denying [Dr. Mohan and NOHC's] motion for judgment notwithstanding the verdict because Dr. Diaco failed to opine to a reasonable degree of medical certainty that the negligence of Dr. Mohan proximately caused Mr. Bolen to undergo open-heart surgery.**

{¶6} In their first assignment of error, Dr. Mohan and NOHC contend that the trial court erred when it denied their motions for directed verdict and judgment notwithstanding the verdict because Dr. Diaco was not competent to testify as an expert. In their second assignment of error, Dr. Mohan and NOHC contend that the trial court erred when it denied their motions for directed verdict and judgment notwithstanding the verdict because Dr. Diaco failed to opine to a reasonable degree of medical certainty that the negligence of Dr. Mohan proximately caused Mr. Bolen to undergo open-heart surgery. We disagree on both points.

{¶7} As a motion for directed verdict presents a question of law, our review is de novo. *Roberts v. Falls Family Practice, Inc.*, 9th Dist. Summit No. 27973, 2016-Ohio-7589, ¶ 11, citing *Spero v. Avny*, 9th Dist. Summit No. 27272, 2015-Ohio-4671, ¶ 17. "A trial court must grant a motion for directed verdict after the evidence has been presented if, 'after construing the evidence most strongly in favor of the party against whom the motion is directed, * * * reasonable minds could come to but one conclusion upon the evidence submitted.'" *Roberts* at ¶ 11, citing Civ.R. 50(A)(4) and *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 16. Nonetheless, "if there is substantial competent evidence to support the party against whom the

4

motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115 (1977). "A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, ¶ 7, citing *Strother v. Hutchinson*, 67 Ohio St.2d 282, 284 (1981).

{¶8}    After a trial court enters a judgment on a jury's verdict, a party may file a motion for judgment notwithstanding the verdict to have the judgment set aside on grounds other than the weight of the evidence. Civ.R. 50(B). Judgment notwithstanding the verdict "is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams v. Spitzer Auto World, Inc.*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 9. However, if "there is substantial evidence to support [the non-moving party's] side of the case, upon which reasonable minds may reach different conclusions the motion must be denied." *Jackovic v. Webb*, 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 15, quoting *Osler v. City of Lorain*, 28 Ohio St.3d 345, 347 (1986). "As with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a judgment notwithstanding the verdict de novo." *Jackovic* at ¶ 15, quoting *Williams* at ¶ 9.

**A. Dr. Diaco's Competency to Testify as an Expert**

{¶9}    In their first assignment of error, Dr. Mohan and NOHC contend that the trial court erred when it denied their motions for directed verdict and judgment notwithstanding the verdict because Dr. Diaco was not competent to testify as an expert on the issue of liability in a

medical claim. Evid.R. 601 governs the general rule of competency to be a witness. That rule states, in relevant part,

> Every person is competent to be a witness except:
>
> * * *
>
> A person giving expert testimony on the issue of liability in any medical claim * * * asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless:
>
> (1) The person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state;
>
> (2) The person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school and
>
> (3) The person practices in the same or a substantially similar specialty as the defendant. The court shall not permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless the expert shows both that the standards of care and practice in the two specialties are similar and that the expert has substantial familiarity between the specialties.

Evid.R. 601(D). "[T]he purpose of Evid.R. 601(D) is to prohibit a physician who makes his living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients." *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, ¶ 23.

{¶10} In this case, the Bolens called Dr. Diaco to testify as an expert witness. Neither Dr. Mohan nor NOHC filed a motion in limine challenging Dr. Diaco's competency to testify as an expert prior to trial, nor did they object to Dr. Diaco's testimony or move to strike his testimony based upon his competency to testify as an expert. Rather, Dr. Mohan and NOHC orally moved for a directed verdict after Dr. Mohan and NOHC thoroughly cross-examined Dr. Diaco and the Bolens had rested their case, arguing, inter alia, that the Bolens had failed to elicit

any testimony from Dr. Diaco showing that he devotes at least one half of his professional time to the active clinical practice of medicine. In denying defendants' motion for directed verdict, the trial court stated that it did not believe the issue of competency was one that could be raised after the witness had testified. However, when looking broadly at Dr. Diaco's testimony, it was reasonable to conclude that he spends at least half of his professional time on the practice of cardiology and intervention cardiology.

{¶11} Dr. Mohan and NOHC renewed their motion for directed verdict at the close of all evidence and the trial court denied it for the same reasons outlined above. Likewise, in denying Dr. Mohan and NOHC's subsequent motion for judgment notwithstanding the verdict, the trial court found there was sufficient evidence and testimony presented at trial to qualify Dr. Diaco as an expert witness. The trial court further noted that Dr. Mohan and NOHC "never objected to Dr. Diaco's qualifications or the appropriateness of his testimony during direct or cross examination or re-direct or re-cross examination" and that "[i]t is well settled that a party waives an error in the presentation of evidence by failing to object at the time it occurred."

{¶12} Upon review of the record, we conclude that, by failing to object or move to strike Dr. Diaco's testimony, Dr. Mohan and NOHC forfeited the issue of his competency. *See Hyams v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97439, 2012-Ohio-3945, ¶ 11-27; *Boardman Twp. Park Dist. v. Boardman Supply Co.*, 7th Dist. Mahoning No. 99 CA 297, 2001-Ohio-3524 (declining to consider the appellant's argument that the trial court erred in denying a motion for judgment notwithstanding the verdict because the appellant failed to object to the evidence and "[a] failure to object to evidence at trial constitutes a waiver of any challenge to its admission."), citing *Gollihue v. Consolidated Rail Corp.*, 120 Ohio App.3d 378, 388 (3d Dist.1997).

{¶13} Therefore, Dr. Mohan and NOHC's first assignment of error is overruled.

**B. Dr. Diaco's Expert Opinion Testimony**

{¶14} In their second assignment of error, Dr. Mohan and NOHC contend that the trial court erred when it denied their motions for directed verdict and judgment notwithstanding the verdict because Dr. Diaco never opined to a reasonable degree of medical certainty that Dr. Mohan's negligence proximately caused Mr. Bolen to undergo open-heart surgery.

{¶15} In order to establish a claim of medical malpractice, a plaintiff must show by a preponderance of the evidence that the defendant breached the standard of care owed to the plaintiff and that breach proximately caused an injury. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, paragraph one of the syllabus (1976). The requisite standard of care must be provided through expert testimony. *Id.* at 131-132. Additionally, "[a] medical-malpractice claim requires the plaintiff to 'prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence.'" *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 9th Dist. Summit No. 24219, 2009-Ohio-2460, ¶ 11, quoting *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 485 (1996). "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." *Stinson v. England*, 69 Ohio St.3d 451 (1994), paragraph one of the syllabus, citing *Cooper v. Sisters of Cincinnati, Inc.*, 27 Ohio St.2d 242, 253 (1971).

{¶16} At the close of the Bolens' case-in-chief, Dr. Mohan and NOHC orally moved for a directed verdict arguing, in part, that Dr. Diaco had failed to opine to a reasonable degree of certainty that Dr. Mohan's negligence caused Mr. Bolen to undergo open-heart surgery. In considering Dr. Mohan and NOHC's motion for directed verdict, the trial court reviewed Dr. Diaco's testimony and subsequently denied the motion. Dr. Mohan and NOHC renewed their motion for directed verdict at the close of evidence, which was also denied by the trial court. In

denying the renewed motion for directed verdict, the trial court stated the following on the record:

> Although there's a bit of a tortuous trail Dr. Diaco takes us on before he renders his opinion, he ultimately does opine that the surgery, open heart surgery, would not have been necessary if the stent had not been lodged in there; that because the stenting had been successful in the past, that that would have been the appropriate course of continuing treatment, except for the fact that this was lodged in there, this stent was lodged in there. And the doctor did agree that there was no alternative but to perform the open heart surgery as a result of this.

Similarly, in denying the motion for judgment notwithstanding the verdict, the trial court found "there was competent, sufficient and proper testimony presented at trial by the [Bolens'] expert witness Dr. Diaco, based upon a reasonable medical probability and certainty, as to the appropriate standard of care, that [Dr. Mohan and NOHC] breached the standard of care and that the breach was the direct and proximate cause of injuries and damages to the [Bolens].

{¶17} Indeed, a review of the record shows that Dr. Mohan testified on cross-examination during the Bolens' case-in-chief that she discussed the risks of the stenting procedure with Mr. Bolen prior to his surgery, including the possibility of open heart surgery. However, she further stated, "[t]he open heart surgery would come in if in the event that something untoward happens at the time of the intervention" and that "here something untoward happened." Additionally, after Dr. Diaco testified as to how a stenting procedure is performed, he further opined to a reasonable degree of medical certainty that based on the location of the undeployed stent, had Dr. Mohan realized the stent had become dislodged from the balloon prior to attempting to deploy the two additional stents, that stent would have been easily snared. He further testified that the standard of care for cardiologists requires that anytime an undeployed stent is removed from the body, it should be examined, not just to ensure that the stent is still attached to the balloon, but also to look at the condition of the stent and the condition of the

balloon. He then opined to a reasonable degree of medical certainty that it is below the standard of care to not check and determine if a stent is on the balloon when it is removed because Dr. Mohan "would have never put the second stent in if she knew the first stent wasn't on the balloon." Dr. Diaco also stated that because Dr. Mohan attempted to push two additional stents beyond the first undeployed stent, the first undeployed stent became crumpled up in the circumflex and was sticking into the left main artery. Dr. Diaco also opined to a reasonable degree of medical certainty that notwithstanding the undeployed stent, based on Mr. Bolen's medical history, he would not have needed to have open-heart surgery because he could have been treated by continued stenting. However, because the undeployed stent "could shut off all the vessels distal to where that stent is protruding in the left main" causing a potentially lethal situation, "the only way to deal with it at that time is to do bypass surgery."

{¶18} Therefore, upon review of the record in this matter, we determine that the Bolens presented sufficient evidence that Dr. Mohan's negligence proximately caused Mr. Bolen's open-heart surgery. Therefore, Dr. Mohan and NOHC's second assignment of error is overruled.

### Dr. Mohan and NOHC's Assignment of Error III

**The trial court abused its discretion in permitting introduction of medical bills because [the Bolens'] sole expert, Dr. Diaco, failed to state the care and treatment was causally related to the alleged negligence of [] Dr. Mohan.**

{¶19} In their third assignment of error, Dr. Mohan and NOHC contend that the trial court erred when it permitted the introduction of Mr. Bolen's medical bills because Dr. Diaco failed to state that the care and treatment was causally related to the alleged negligence of Dr. Mohan. We disagree.

{¶20} With regard to the admission or exclusion of evidence, trial courts are "vested with broad discretion and an appellate court should not interfere absent a clear abuse of that

discretion." *State v. Yarbrough*, 95 Ohio St.3d 227, ¶ 40, quoting *State v. Allen*, 73 Ohio St.3d 626, 633 (1995). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219. When reviewing for an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶21} "The Ohio Supreme Court has held that, '[e]xcept as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion.'" *Scott v. Hong*, 9th Dist. Wayne No. , 2009-Ohio-780, ¶ 13, quoting *Darnell v. Eastman*, 23 Ohio St.2d 13, 17 (1970).

{¶22} In this case, the Bolens sought to admit certain medical records into evidence at the close of their case. Dr. Mohan and NOHC objected to the admission of some of the records on the basis that the Bolens did not present any expert testimony suggesting that the bills or the treatment rendered for those bills were the direct and proximate result of Dr. Mohan's negligence. The trial court ultimately allowed the medical records at issue to be admitted. In doing so, the trial court stated the following:

> From the Court's perspective, in light of the fact that the Plaintiff has produced the medical bills and medical records with regard to that that creates a certain level of presumption, or prima facie evidence rather, of reasonableness and necessity in that regard; and, in light of the fact there is expert testimony that the – although a bit tortuous, indicates to a jury that a reasonable – to a reasonable degree of medical certainty that bypass would not have been necessary if not for the stent being lodged in the artery, this Court is going to deny * * * the motion to exclude medical records.

{¶23} As recognized above, a review of the record shows that Dr. Diaco opined during his testimony that to a reasonable degree of medical certainty, notwithstanding the undeployed

stent, Mr. Bolen would not have needed to have immediate open-heart surgery. However, because the undeployed stent "could shut off all the vessels distal to where that stent is protruding in the left main" causing a potentially lethal situation, "the only way to deal with it at that time is to do bypass surgery." Moreover, Dr. Mohan specifically testified that "[t]he open heart surgery would come in if in the event that something untoward happens at the time of the intervention" and that "here something untoward happened."

{¶24} Accordingly, we cannot say that the trial court abused its discretion by admitting the medical records at issue. Therefore, the assignment of error is overruled.

### Bolens' Assignment of Error

**The trial court erred by not conducting a hearing on [The Bolens'] motion for prejudgment interest and by summarily determining [Dr. Mohan and NOHC] acted in good faith in refusing to offer any money to settle the underlying case.**

{¶25} In their sole assignment of error, the Bolens contend that the trial court erred by not conducting an evidentiary hearing prior to denying the Bolens' motion for prejudgment interest. We agree.

{¶26} R.C. 1343.03(C) governs the award of prejudgment interest in a tort action. That statute provides in pertinent part:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed[.]

R.C. 1343.03(C)(1). Thus, in order to award prejudgment interest, R.C. 1343.03 requires: (1) that the party seeking prejudgment interest to petition the court within the proper time frame; (2)

"the trial court must hold a hearing on the motion"; (3) "the trial court must determine that the party required to pay the judgment failed to make a good faith effort to settle"; and (4) "the trial court must find that the party owed the judgment did not fail to make a good faith effort to settle." *Kane v. Saverko*, 9th Dist. Summit No. 23908, 2008-Ohio-1382, ¶ 8, citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658 (1996). "[I]f a party meets the four requirements of the statute, the decision to allow or not allow prejudgment interest in not discretionary. What is discretionary with the trial court is the determination of lack of good faith." *Moskovitz* at 658.

{¶27} "We review a trial court's determination regarding whether a party made a 'good faith effort' to settle for an abuse of discretion." *Kane* at ¶ 9. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore*, 5 Ohio St.3d at 219. "However, as a threshold issue, we look to see if the components of the statute were met." *Kane* at ¶ 9.

{¶28} In this case, the Bolens filed their motion for prejudgment interest on July 17, 2014. Dr. Mohan and NOHC subsequently filed their brief in opposition to the motion for prejudgment interest on July 21, 2014. Nearly two years later, the trial court filed a journal entry denying the Bolens' motion for prejudgment interest on July 19, 2016. However, a review of the record shows that the trial court did not hold an oral evidentiary hearing nor order a date certain for the submission of evidentiary materials.

{¶29} The Supreme Court of Ohio has specifically held that "a trial court must set a date certain for an evidentiary hearing before ruling on an R.C. 1343.03(C) motion for prejudgment interest." *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, ¶ 1. "The trial court, however, has the discretion to determine the nature of the evidentiary hearing to be held, as it is in the best position to select the kind of evidence necessary to make the findings required by

R.C. 1343.03(C) and determine whether an award of prejudgment interest is proper." *Id.* at ¶ 12. Accordingly, the trial court may decide that presentation of evidence by affidavits, depositions, and other documents is sufficient and at other times decide that an oral evidentiary hearing is more appropriate. *Id.* at ¶ 13. The Supreme Court of Ohio has stated,

> Regardless of the type of hearing selected by the trial court, the court can then use its discretion to rule on the motion based upon the evidence submitted. A trial judge, therefore, is required to schedule a date certain for the evidentiary review and/or oral hearing upon the filing of a motion for prejudgment interest. By providing this notice to the parties, the trial court respects their right to an evidentiary hearing while imposing a deadline. The trial court, however, does not have discretion to rule on a motion for prejudgment interest based solely on the motion and briefs unless the court previously has ordered a date certain for the submission of evidentiary materials, because the plain terms of the statute require that a hearing be held.

*Id.* at ¶ 14.

{¶30} Accordingly, we conclude that the trial court abused its discretion in ruling on the merits of the Bolens' motion for prejudgment interest without setting a date certain for an evidentiary hearing. Nonetheless, this determination should not be construed as a ruling on the merits of the Bolens' motion.

{¶31} Therefore, the Bolens' sole assignment of error is sustained and the matter is remanded for further proceedings consistent with this opinion.

III.

{¶32} Dr. Mohan and NOHC's first, second, and third assignments of error are overruled. The Bolens' sole assignment of error is sustained and this matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to appellant/cross-appellees.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRET C. PERRY, JOHN S. POLITO, and JASON S. PASKAN, Attorneys at Law, for Appellants/Cross-Appellees.

BRENT L. ENGLISH, Attorney at Law, for Appellees/Cross-Appellants.